# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
April 13, 2010 Session

## STATE OF TENNESSEE v. WILLIAM "BILL" BOSLEY, JR.

**Direct Appeal from the Circuit Court for Hardin County**
**No. 8794      C. Creed McGinley, Judge**

**No. W2009-00783-CCA-R3-CD  - Filed May 27, 2010**

The defendant, William "Bill" Bosley, Jr., was convicted by a Hardin County Circuit Court jury of aggravated sexual battery, a Class B felony, and sentenced to twelve years in the Department of Correction.  On appeal, he argues that (1) the evidence was insufficient to support his conviction, (2) the trial court erred in denying his motion for new trial based on the State's withholding of evidence in violation of Brady v. Maryland, and (3) the trial court erred in failing to address the need for a change of venue.  After review, we affirm the judgment of the trial court but remand for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded for Entry of Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Ryan B. Feeney, Selmer, Tennessee (on appeal); and James S. Powell, Savannah, Tennessee (at trial), for the appellant, William "Bill" Bosley, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Hansel J. McCadams, District Attorney General; and Ed N. McDaniel and James E. Williams, III, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In March 2008, the defendant was indicted on the charge of rape of a child for an act

committed against the victim, E.L.,[1] his grand-niece, who was five years old at the time. At trial, the then six-year-old victim testified that the defendant, her uncle, picked up her and her sister, L.L., on a day in December 2007 and took them to his house to spend the night. She recalled that while it was daytime and only the three of them were at the house, the defendant pushed her on the couch, pulled her clothes halfway down, and "stuck his finger in [her] private spot and . . . stuck his tongue in [her] private spot." Afterwards, they went with the defendant to the veterinarian, then he took them home. The victim reported the incident to her mother and father, and they went to the police station and to see a doctor.

L.L., the victim's eight-year-old sister, testified that she and the victim spent the night at the defendant's house sometime toward the end of 2007. She recalled that the following morning, the defendant asked the victim if she wanted to watch a "dirty movie." The victim initially declined but, after being persuaded by the defendant, agreed to watch the movie. From where she was sitting in the defendant's bedroom using the computer, L.L. witnessed the defendant "put [the victim] on the couch [in the living room,] pull[] her pants down, . . . look[] at thingie, and . . . stick[] his finger in it." L.L. recalled that afterwards, they went with the defendant to the veterinarian, then back to the defendant's house, to Walmart, and finally home. The defendant told the girls that they would get in trouble if they told anyone, but L.L. told her mother who told her father. On cross-examination, L.L. acknowledged that she and the victim had talked with people who had told her how to "say things."

Melissa Ruth Lowery, the mother of the victim and L.L., testified that the defendant was her uncle and the girls' great-uncle. She said that on December 28, 2007, the girls spent the night at the defendant's house, and he brought them home the next day after taking his dog to the veterinarian. On New Year's Eve, the girls told her about something that had happened at the defendant's house, which prompted her to go to the police and take the victim to the doctor. On cross-examination, Lowery denied asking to live in Rebecca Washburn's lake house or threatening to leave her husband because of something going on with her daughters.

Family Nurse Practitioner Jo Jones testified that she interviewed and examined the victim on January 2, 2008. The physical examination revealed findings consistent with the victim's account of sexual touching and also findings consistent with an absence of sexual touching.

Fourteen-year-old Kirsten Mattner testified that she and her mother, Debbie Burgess, lived in the defendant's house, and she was in her bedroom with the door open at the time the incident allegedly occurred. That morning, the victim and L.L. were playing with toys,

---

[1] This court's policy is to refer to minors by their initials only.

books, and the dogs, and cartoons were on the television. Mattner said that she did not hear anything "x-rated" on the television and did not remember anything bad happening. Mattner stated that Burgess was at the house that morning as well and left only about fifteen minutes before the defendant to also go to the veterinarian.

On cross-examination, Mattner acknowledged that in her statement to police given two days after the incident, she said that the defendant, her mother, and the girls had run errands and returned before she even woke up. On redirect, Mattner clarified that she woke up at 10:00 a.m. to the sound of the girls playing with the dogs but did not physically get out of bed until noon.

Debbie Burgess, the defendant's stepdaughter, testified that she and her daughter, Kirsten Mattner, were living in the defendant's house at the time of the alleged incident. On that day, she woke up between 8:00 and 8:30 a.m. and watched television as the victim and her sister played. She noted that at one point, one of the girls talked to her mother on the telephone. Burgess left to take her dog to the veterinarian about fifteen or twenty minutes before the defendant left to also go to the veterinarian. Burgess observed nothing out of the ordinary take place that day and thought that it was impossible for the victim's allegations to be true because Mattner was at the house while Burgess was at the veterinarian. Burgess said that the girls never acted as if anything bad had happened.

Rebecca Washburn, the defendant's sister, testified that Lowery, the victim's mother, called her about two and half years ago and asked if she could stay at Washburn's lake house in Texas because she was leaving her husband. Washburn recalled that Lowery said she was leaving her husband because he and his brother were "messing with the girls." Washburn said that Lowery ended up not going to Texas.

Esther Bosley, the defendant's mother, testified that she lived in Washburn's lake house at one point two years earlier and that Lowery had called her and said, "I want to stay with you when I come down." She elaborated that Lowery and her daughters were planning to travel with the defendant to Texas to visit her.

Following the conclusion of the proof, the jury convicted the defendant of the lesser-included offense of aggravated sexual battery.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence. In considering

this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 39-13-504 provides:

> (a) Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:

>> (1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

(2) The defendant causes bodily injury to the victim;

(3) The defendant is aided or abetted by one (1) or more other persons; and

    (A) Force or coercion is used to accomplish the act; or

    (B) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or

(4) The victim is less than thirteen (13) years of age.

Tenn. Code Ann. § 39-13-504(a)(4).

The defendant argues that the evidence was insufficient because the State did not present evidence of force or coercion, bodily injury, or that the defendant was aided or abetted by another person. However, the defendant's argument overlooks that aggravated sexual battery can also be established by showing that the victim was less than thirteen years old. The victim, who was six years old at the time of trial, was clearly less than thirteen years old at the time of the offense.

The defendant also insinuates that the evidence was insufficient because there was no evidence establishing sexual abuse aside from the testimony of the victim and her sister. The victim testified that the defendant pushed her on the couch, pulled her clothes halfway down, and "stuck his finger in [her] private spot and . . . stuck his tongue in [her] private spot." The victim's sister, L.L., corroborated the victim's account of the events. The nurse practitioner's testimony neither proved nor disproved that a sexual touching occurred. The State's witnesses were all subjected to rigorous cross-examination by the defendant, and the jury heard the testimony and found the victim's and her sister's testimony credible. The testimonial evidence was sufficient to support the defendant's conviction.

## II. **Brady** Violation

The defendant next argues that "the prosecution, after repeated requests, consistently and willfully refused to provide . . . the videotaped interview of the alleged victim . . . wherein the alleged victim describe[d] the alleged incident[,]" and the trial court did nothing to ensure the State supplied the videotape. He claims that the written transcript of the interview "raise[d] the specter of possible 'victim' coaching."

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). In order to establish a Brady violation, a defendant must show that he or she requested the information, the State suppressed the information, the information was favorable to his or her defense, and the information was material. State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). Evidence is "material" only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. United States v. Bagley, 473 U.S. 667, 682 (1985). The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence. Edgin, 902 S.W.2d at 389.

We initially note that there is no request for discovery in the record before this court. In fact, there is nothing in the record that supports that a videotape was ever made, that a videotape was requested, or that the State did not provide the requested material. The first reference to any withheld evidence appears in the defendant's motion for new trial, which the trial court denied by written order. However, the transcript of the hearing on the motion for new trial was not included in the record before us. The defendant has simply failed to carry his burden of proving a Brady violation by a preponderance of the evidence. In any event, whether the victim was coached bears on her credibility, and her credibility was thoroughly examined by the defendant in his cross-examination of the State's witnesses.

### III. Venue

The defendant lastly argues that the trial court erred in "failing to recognize and address the need for a change of venue, given the publicity that has been focused upon this case." The defendant reports the publicity at issue being a five-paragraph newspaper article in the Savannah Courier, his hometown newspaper, that identified him as being "'accused of sodomizing a 5-year old girl.'" He recounts that the article described that "'the girl said Bosley licked her vagina and penetrated it with his finger,['] that the 'incident was witnessed by a 7-year old girl,' that 'Bosley has been convicted of 'the same type incident' previously, and other similar accusation [sic] had been made in the past but not prosecuted.'"

The rules of criminal procedure provide that a trial court may grant a change of venue if it appears that "due to undue excitement against the defendant in the county where the offense was committed or any other cause, a fair trial probably could not be had." Tenn. R. Crim. P. 21(a). Whether to grant a motion for change of venue is left to the sound discretion of the trial court, and the court's ruling will be reversed on appeal only upon a clear showing of an abuse of that discretion. State v. Davidson, 121 S.W.3d 600, 611-12 (Tenn. 2003). The mere fact that jurors have been exposed to pretrial publicity will not warrant a change

of venue.  <u>State v. Mann</u>, 959 S.W.2d 503, 531-32 (Tenn. 1997).  For this court to reverse a conviction based on a venue issue, the "defendant must demonstrate that the jurors who actually sat were biased or prejudiced against him."  <u>Evans</u>, 838 S.W.2d at 192.

We initially note that there is no indication that the defendant brought the issue of publicity to the trial court's attention before or during the trial.  As with the defendant's <u>Brady</u> argument, the first and only mention of any publicity surrounding the case appears in the defendant's motion for new trial, and the transcript of the hearing on the motion is not in the record before us.  Even so, the rules of criminal procedure allow the trial court to order a change of venue on its own initiative.  <u>See</u> Tenn. R. Crim. P. 21(a).  However, it is still the defendant's burden to prove on appeal that the jurors on his case were biased or prejudiced against him – a burden he has not carried.  The defendant merely offers that "[t]his type of publicity would undoubtedly produce undue excitement in which a fair trial 'probably' could not be obtained."  Yet, he offered no proof in support of this claim.  In fact, at the start of voir dire, the potential jurors were asked if they had heard anything about the case, and no affirmative responses were noted in the record.  If the potential jurors were not aware of any publicity surrounding the case, we would be hard-pressed to determine that the actual jurors were aware of the publicity and prejudiced by it.  The defendant is not entitled to relief on this issue.

As part of his argument concerning venue, the defendant also alleges that he did not receive a fair trial in Hardin County because two of his witnesses were threatened by the victim's family members.  Again, the first mention of this allegation appears in the motion for new trial, and we do not have the transcript of that hearing before us to determine whether the defendant presented any proof on the issue.  In this court, the defendant offered no proof in support of his claim other than his bare allegation.  Moreover, we are perplexed as to how a change of venue would have had any impact on whether the victim's family would have threatened the witnesses.  The defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.  We note that the judgment correctly identifies aggravated sexual battery as the offense of conviction; however, it lists the incorrect statute for that offense.  Therefore, we remand for entry of a corrected judgment to reflect the correct statute for aggravated sexual battery, Tenn. Code Ann. § 39-13-504.

_____
ALAN E. GLENN, JUDGE